## APPEAL OF FALKETIND SHIP CO.

Docket No. 3706.   Promulgated February 3, 1927.

ACCOUNTING FOR ROUND-TRIP VOYAGES.—The accrual method of accounting, as applied by this petitioner to round-trip voyages of a sailing vessel, *held* clearly to reflect the income as required by section 212 (b) of the Revenue Act of 1918.

*Irving H. Frank* for the petitioner.
*Ellis W. Manning, Esq.,* for the Commissioner.

On February 27, 1925, the Commissioner caused to be forwarded to the petitioner a deficiency letter disclosing the results of an audit of petitioner's income and profits-tax returns for the calendar years 1918 and 1919, and asserting a deficiency for the year 1918 in the amount of $40,881.04, indicating an overassessment for the year 1919 in the amount of $8,931.95.

### FINDINGS OF FACT.

The petitioner is a California corporation organized pursuant to certain war legislation of the United States and certain regulations of the United States Shipping Board, and for the purpose of taking title to and operating the sailing schooner *Falketind.* The principal office of said corporation is in San Francisco.

The company is what is known in shipping parlance as a single ship company, that is, it owned and operated one vessel. During the calendar years 1918 and 1919, San Francisco was the home port of the schooner *Falketind.* The petitioner began the operation of the schooner in the year 1917, during which year the ship made a voyage from San Francisco to Manila. During the first half of the

year 1918 the ship made the return voyage from Manila to San Francisco.

On February 25, 1918, the petitioner executed a charter party with F. Griffin & Co., chartering the schooner for a voyage from San Francisco to Melbourne and Sydney, New South Wales, for the lump sum of $110,000 net, payable in San Francisco upon the signing of outward bills of lading at San Francisco, whole prepaid freight to be considered earned, vessel lost or not lost.

On May 8, 1918, the Anglo-Norwegian Shipping Co., Inc., agents for the Falketind Ship Co., entered into a charter party with the Food Administration Grain Corporation of Australia, chartering the *Falketind* for the delivery of a cargo of wheat from Sydney, and other near-by ports, to San Francisco Bay. Payment of the freight in this case was to be made, less advances, upon unloading and right delivery of the cargo. Following the completion, in 1918, of the return voyage from Manila, the schooner was put in condition, loaded, and furnished with supplies, stores and crew for its proposed voyage to Melbourne and Sydney. The conditioning and furnishing of stores and supplies for this voyage cost the petitioner $16,508.96. The contracts with the captain and members of the crew provided for the payment of their compensation for the complete round voyage from San Francisco to Sydney and return to San Francisco after the full round voyage had been completed.

The voyage to Melbourne and Sydney was started on July 25, 1918, and at or about that time the charterer, F. Griffin & Co., paid to the petitioner advanced freight charges in the amount of $103,752. The vessel arrived at the port of Sydney on October 13, 1918, where she thereafter discharged her cargo. At Sydney the master of the vessel paid out, in connection with the discharge of the outgoing cargo, $9,328.78. He also paid, in connection with the return cargo, $9,244.61.

At Sydney the master of the vessel took on a deck cargo in addition to the regular cargo contracted for by the Australian Food Administration Grain Corporation, and for the carriage of this deck cargo received, and later accounted for, the sum of $514.57. The vessel commenced its return voyage from Sydney to San Francisco on December 20, 1918.

The vessel arrived at its home port in San Francisco on April 1, 1919, and completed the discharge of her cargo on or about May 1, 1919, at which time the petitioner received the additional amount of $63,097.87, freight money paid for the regular cargo carried on the return voyage.

Prior to the completion of the round voyage from San Francisco and return the petitioner had made entries upon its books respecting

the advanced receipts of freight money and disbursements applicable to such round voyage substantially as follows:

| | | |
|---|---:|---:|
| Receipts, F. Griffin & Co._____ | $103, 752. 00 | |
| Cowlishaw Bros., Sydney_____ | 514. 57 | |
| | | $104, 266. 57 |
| Disbursements for outward voyage_____ | 16, 508. 96 | |
| For outward voyage at Sydney_____ | 9, 328. 78 | |
| For return voyage at Sydney_____ | 9, 244. 61 | |
| | | 35, 082. 35 |
| Credit balance _____ | | 69, 184. 22 |

In its balance sheet as of December 31, 1918, it carried the said credit as a liability as follows:

Voyage #2—uncompleted _____ $69, 184. 22

Of the disbursements above set forth, the items disbursed at the Port of Sydney were not known at the petitioner's office until some time during the early months of 1919. Under all the charters herein referred to the petitioner operated the vessel, supplying her master, officers, and crew; paying their wages; supplying and paying for her stores; making repairs and paying therefor; paying for stevedoring, pilotage, clerkage, port dues, dockage, surveys, dunnage, towage, agency fees, insurance, and other like charges.

In the year 1918, and prior to the beginning of the voyage to Sydney, the *Falketind* had completed the return voyage from the Philippine Islands. In the petitioner's income and profits-tax return for the year. 1918 it showed gross income in the amount of $96,610.71, and deductions aggregating $92,026.69, net income $4,582.02. These figures all pertain to the completed Philippine Islands voyage.

In its income and profits-tax return for the year 1919 the petitioner showed—

| | |
|---|---:|
| Gross income _____ | $167, 442. 87 |
| Deductions aggregating _____ | 108, 659. 41 |
| Net income_____ | 58, 783. 46 |

All of these figures of income and deductions are the result of the round-trip voyage from San Francisco to Sydney and return, which voyage began in the year 1918 and ended in the year 1919. In its balance sheet as of December 31, 1919, the petitioner carried a liability item as follows:

Voyage #3—out_____ $77, 533. 97

During the years here under consideration the petitioner kept its books of account according to approved accrual methods as applied to a round-trip voyage of the ship it operated, and it closed its books annually on December 31, on the basis of the round-trip voyages completed during each calendar year.

## OPINION.

TRUSSELL: The record of this case contains the testimony of several witnesses, some of whom are officers of corporations engaged in operating what are known as single ship companies; others are accountants who have had experience in keeping and auditing accounts of such companies. All of these witnesses testified that in the case of the so-called single ship companies it is, and for years past has been, a general practice to keep the accounts of such companies on the accrual basis as applied to completed round-trip voyages and to close the books for each year on the basis of the round voyages completed in each year. And, we are convinced that that method of accounting as employed by this petitioner can be properly said clearly to reflect its income under provisions of section 212 (b) of the Revenue Act of 1918.

On the other hand, when the Commissioner made up his assertion of a deficiency for the year 1918 he had before him the fact that the round-trip voyage from San Francisco to Sydney and return had consumed not less than 250 days, of which 160 fell in the year 1918 and 90 in the year 1919. He also had before him the fact that the total deductions for the round trip aggregated $108,659.41, and yet he proposed to allow for the year 1918 of such total deductions only the sum of $35,082.35, which indicates a clear distortion of net income for that year. We are, therefore, of the opinion that the petitioner's books of account and its income and profits-tax returns made upon the basis of such accounts, must be said clearly to reflect its income and should not be disturbed.

> *The deficiencies may be redetermined in accordance with the foregoing findings of fact and opinion pursuant to Rule 50, and judgment will be entered in due course.*